UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID O. KINGSLAND,

Plaintiff,

DECISION AND ORDER

09-CV-6242L

v.

XEROX CORPORATION,

Defendant.

---

Plaintiff David Kingsland ("plaintiff"), a former employee of defendant Xerox Corporation

("Xerox"), brings this action against Xerox seeking contractual and other damages related to his

1997 transfer to Xerox subsidiary Xerox Engineering Systems, Inc. ("XES"), and the subsequent

dissolution/reabsorption of XES by Xerox.  Xerox has moved to dismiss the complaint pursuant to

Fed. R. Civ. Proc. 8(a)(2), 9(b) and 12(b)(6), arguing in part that: (1) plaintiff's claims are barred by

a release he signed on December 19, 2002 (the "Release"); (2) plaintiff's state common law claims

are preempted by the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq.

("ERISA");[1] (3) plaintiff's claims are time-barred; and (4) plaintiff has failed to state claims for

breach of contract and/or unjust enrichment.

Plaintiff opposes the motion, and has cross moved to amend the ad damnum clause of the

complaint (Dkt. #6) to seek an accounting and compensatory damages pegged to the value of the

---

[1] Plaintiff argues, and the Court concurs, that regardless of the fact that plaintiff's initial
complaint refers to "pension benefits" (a point of confusion plaintiff has attempted to rectify in
his cross motion to amend), his claims do not arise under the ERISA-governed Xerox retirement
plan, but under the Stock Option Plan, which the parties agree is not governed by ERISA.  I find
that the plaintiff's claims are purely contractual, quasi-contractual and/or equitable in nature, and
thus there is no ERISA preemption issue.

stock options that plaintiff claims were wrongfully rendered worthless by Xerox's decision to re-absorb XES.

For the reasons that follow, Xerox's motion to dismiss (Dkt. #4) is granted, and plaintiff's cross motion to amend (Dkt. #6) is denied as moot.

INTRODUCTION

Plaintiff claims that in or about 1997, while he was employed by Xerox as a Senior Vice President, Xerox offered him the option to join XES, a new Xerox subsidiary, in exchange for largely similar pay and benefits. There was a notable difference in the new benefit package: while plaintiff's Xerox retirement benefits included an annual employer contribution of up to 8.25% of plaintiff's salary, the XES package did not offer an employer contribution, but instead gave employees stock options in XES, which, plaintiff and the other XES employees were told, might be profitable if and when an initial public offering of XES stock took place. Plaintiff accepted the position with XES on these terms, and remained with XES for five (5) years, until 2002.

Plaintiff alleges that during his tenure with XES, the company was plagued by frequent turnovers in management, and that XES struggled to achieve sufficient revenue. Eventually, Xerox determined that XES was not profitable. Although Xerox initially informed XES officers, including plaintiff, that it intended to sell XES as an entity, Xerox ultimately decided to re-absorb XES into Xerox instead, and significantly reduced employees in that venture. Plaintiff was one of the employees to be terminated.

XES turned out not to be a profitable endeavor and, therefore, there never was an initial public stock offering. There was XES stock, but it was never publicly traded. Thus, when Xerox determined to re-absorb XES and not treat it as a wholly owned subsidiary, it rendered XES stock and the stock options held by plaintiff, and others, essentially worthless.

Plaintiff appealed to Xerox to reconsider its decision to reabsorb XES, and requested that Xerox consider offering the affected XES employees re-instatement into the Xerox Retirement

- 2 -

Income Guaranty Plan, and replacement of XES stock options with Xerox stock options. Xerox declined to do so. In a letter to plaintiff on December 17, 2002, Xerox refused, explaining that "[t]he inability to sell XES led . . . to [Xerox's] decision to integrate portions of [XES] and close down the remainder. For everyone involved we wished there could have been a more positive outcome." (Dkt. #1 at ¶47, Exh. E).

Two days later, on December 19, 2002, and in exchange for a salary continuance and other benefits, plaintiff signed a Release of Claims in favor of Xerox and XES (the "Release"). The Release released both entities from any and all claims, known and unknown, relating to the parties' prior relationship, and acknowledged that it was made for valid consideration, and with the advice to seek legal counsel. *Id*.

Subsequently, plaintiff claims that he learned that despite its representation to the contrary, Xerox had in fact received and refused a cash purchase "offer" for XES, in the amount of one hundred million dollars. Plaintiff contends that he would not have signed the Release if he had known about the purchase offer, and alleges that his termination by Xerox as part of the XES reduction in force was wrongful, and that Xerox breached his contract and/or was unjustly enriched by its actions. In response, Xerox argues that to the extent plaintiff has any claims against Xerox arising out of the termination of his employment, those claims are barred by the Release, and/or are insufficiently stated.

## DISCUSSION

### I.      Standard on a Motion to Dismiss

Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. Proc. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch*

*College*, 835 F.2d 980, 982 (2d Cir. 1987).  "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

In determining whether plaintiff has stated a claim sounding in contract, a court's review is generally limited to the Complaint itself.  However, where, as here, additional documents are incorporated by reference and/or annexed to the Complaint, those documents may also be appropriately considered.  *See Savino v. Fiorella*, 2007 U.S. Dist. LEXIS 43284 at *10-*11 (W.D.N.Y. 2007).   For purposes of determining Xerox's motion to dismiss, the relevant documentation thus includes the Release upon which Xerox relies, as well as documents anc correspondence relating to Xerox's offer of employment to plaintiff, and the XES Stock Option Program.

## II.     Validity of the Release

It is manifest that the Release signed by plaintiff, whereby he released Xerox and XES from all claims "even if I don't know about the claim at this time," applies to the claims asserted in this action.  (Dkt. #1 at Exh. F).  However, plaintiff claims that the Release should be declared void, because he was induced to execute it by economic pressure and/or fraud.

First, plaintiff's contention that he was subjected to economic pressure to sign the Release, that allegation is insufficient to void the Release, because plaintiff at all times retained the consideration he received for it.  *See Davis v. Eastman Kodak Co.*, 2007 U.S. Dist. LEXIS 23193 at *25 (W.D.N.Y. 2007) (once employee is aware of grounds for voiding release, employee's subsequent decision to keep the consideration received for it operates to ratify the release); *2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital, LLC*, 2001 U.S. Dist. LEXIS 4875 at *37 (S.D.N.Y. 2001) ("it is generally the rule under New York Law that where a party receives good consideration for executing a release, and accepts the benefits of the release before

commencing suit to challenge it, that party is held to have ratified the release and is thereby barred as a matter of law from alleging economic duress in its execution").

Plaintiff's claim that Xerox fraudulently induced him into signing the Release by falsely claiming that it was unable to sell XES rests on a stronger factual predicate, but still fails to state a viable claim.  In order to set forth a claim of fraudulent inducement, plaintiff must allege: (1) representation of a material fact; (2) the falsity of that representation; (3) scienter; (4) reliance; and (5) resulting damages. *See e.g.*, *Newman v. Silver*, 553 F. Supp. 485, 497 (S.D.N.Y. 1982), *modified on other grounds*, 713 F.2d 14 (2d Cir. 1983).  Construing plaintiff's complaint in his favor, although plaintiff has alleged that Xerox falsely, and with knowledge of its falsehood, told him that it had been unable to "sell" XES, and that plaintiff relied upon that representation in deciding to sign the Release, plaintiff cannot allege that he was "damaged" by that representation.  Rather, the damages for which plaintiff seeks compensation -- to wit, the devaluation of his XES stock options -- flowed from Xerox's *decision* to reabsorb XES, and bear no causal relationship to its false representation to plaintiff that it had been forced to do so, or by plaintiff's execution of the Release in reliance thereon.

Plaintiff's claim of damages could also be construed to refer to the loss of plaintiff's ability to commence legal action against Xerox, a right which plaintiff relinquished by signing the Release. However, as discussed in greater detail below, plaintiff has not identified any viable, plausible legal claims that he could have asserted against Xerox to recover the diminution in value of his XES stock options, even in the absence of the Release.  Because plaintiff had no cognizable claims to pursue against Xerox, plaintiff was not "damaged" when he signed a Release barring him from  suit, and accepted consideration therefor.

Because plaintiff has failed to plausibly allege that he was fraudulently induced to sign the Release or stated other grounds sufficient to render it invalid, the Release bars all of the plaintiff's instant claims, and they are dismissed.

### III.    Contract and Quasi-Contract (Unjust Enrichment) Claims

Even if the Release did not bar plaintiff's claims, plaintiff has still failed to allege sufficient facts to render them plausible. With regard to plaintiff's contract claims, plaintiff makes no credible claim that Xerox owed him a contractual obligation to solicit or accept purchase offers for XES or otherwise to preserve the value of XES employees' stock options, and does not identify any provision of any contract that Xerox breached when it made the business decision to shut down XES rather than sell it.

Apparently recognizing the lack of a clear contractual obligation on Xerox's part to preserve the value of XES stock options for its employees, plaintiff devotes the bulk of his submissions to the theory of unjust enrichment. In order to state a claim for unjust enrichment, a plaintiff must allege that: (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution. *See Harger v. Price*, 204 F. Supp. 2d 699, 710 (S.D.N.Y. 2002).

It is true that in hindsight, plaintiff's decision to join XES was a gamble that failed to pay off. According to the complaint, Xerox encouraged plaintiff to take a position with a fledgling subsidiary for which it expressed great enthusiasm and optimism. The new business struggled and failed to generate the profit that had been anticipated. Xerox made a business decision to absorb the subsidiary and chose not to take steps to sell it. That was Xerox's choice. It had no obligation to plaintiff or any of the other XES employees to only pursue a course that would benefit them.

Plaintiff alleges that he later learned that there had been a potential suitor to purchase XES for one hundred million dollars. There was speculation about other purchasers as well. In the end, though, Xerox decided against the sale and elected to re-absorb the subsidiary. It did so at no little cost. Because of that business decision, there would be no public offering to possibly affect the value of the stock options held by some XES employees. But, the facts are that the XES subsidiary had operated for several years without much success, and there had been no rush to create an initial public offering for sale of stock in XES.

Regardless of plaintiff's view concerning Xerox's decision concerning XES, the allegations of the complaint do not state a claim for unjust enrichment.  Significantly, plaintiff does not allege that Xerox profited at the XES employees' expense by reabsorbing XES: in fact, plaintiff alleges that Xerox spent an additional fifty to seventy-five million dollars to close XES, rather than sell it for the purported one hundred million dollar offer.  (Dkt. #1 at ¶¶ 51, 52).

Moreover, plaintiff does not sufficiently allege that "equity and good conscience" demand some form of remuneration by Xerox.  There is no suggestion that Xerox anticipated or orchestrated the downfall of XES in order to deprive its employees of their converted Xerox retirement benefits and prevent the possibility that XES employees might sell or exercise their stock options at some point in the future.  While expressing its hope that XES would be successful and would eventually achieve publicly traded status, Xerox did not promise its employees that this goal would be achieved, or that the value of their stock options would be preserved at any particular level regardless of XES's performance.  Plaintiff also does not plausibly allege that Xerox had some contractual or other obligation to favor a sale of XES over reabsorption if XES was unprofitable, particularly if Xerox concluded that reabsorption was in its own best interests.

Finally, plaintiff is a sophisticated businessperson, and there is no contention that it was unforeseeable to him, when he chose to accept a position at a start-up subsidiary which included stock options as part of the benefits package, that there was a risk that those stock options might become worthless in the event that the subsidiary foundered, or that no public offering was ever made and XES was reabsorbed by the parent company.  While plaintiff may easily be characterized as a victim of bad luck, he has failed to allege that he was a victim of a contractual breach, or that Xerox was unjustly enriched at his expense.  Accordingly, his contract and quasi-contract claims are dismissed.

## IV.  Claim for Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff also contends that Xerox violated the covenant of good faith and fair dealing.  Under New York law, the covenant of good faith and fair dealing is implied in all contracts. *511 West*

*232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," and may thus be breached by conduct not expressly forbidden by any contractual provision. *Id.  See also   EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11 (2005); *P.T.& L. Contr. Corp. v. Trataros Constr., Inc.,* 29 A.D.3d 763 (2d Dep't 2006).  However, the covenant is narrowly construed, and an extra-contractual obligation can only be found where the implied term is consistent with the other terms in the contract.  *See Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995).

Here, plaintiff alleges that in choosing to reabsorb XES rather than sell it, Xerox deprived him and other XES employees of part of the benefit of their bargain, by foreclosing their opportunity to profit from their XES stock options.  While it is true that Xerox's actions had the effect of depriving the stock options of their potential value, nothing in the XES Stock Option Plan promised or implied that the stock options would retain their worth indefinitely.  Rather, the XES Stock Option Plan describes the stock options' value in speculative terms, noting their "potential [worth]," if Xerox's "collective vision" for the "future" comes to fruition, and goals that it "hope[s] to accomplish" are achieved -- in particular the hoped-for public offering of XES stock.  (Dkt. #1 at Exh. A).  Xerox characterized the XES stock options as little more than " an opportunity to profit directly *if* XES' value increases . . ."  (Dkt. #6 at 3) (emphasis added).

Because the Stock Option Plan documents do not impose, or imply, any duty or promise on the part of Xerox to preserve the value of the stock options for the benefit of XES employees by favoring a sale of XES instead of reassimilation, the imposition of such a duty by the Court would impermissibly exceed the bounds of the parties' agreement.  As Xerox's business decision to reabsorb XES cannot be plausibly characterized as a breach of the covenant of good faith and fair dealing toward the holders of XES stock options, that claim is dismissed.

**CONCLUSION**

For the foregoing reasons, plaintiff's instant claims are barred by a valid release of claims, and furthermore are insufficiently stated. Xerox's motion to dismiss (Dkt. #4) is granted, and the complaint is dismissed. Plaintiff's cross motion to amend the ad damnum clause of the complaint (Dkt. #6), which has no bearing on the substantive deficiencies identified above, is denied as moot. Plaintiff's request for class certification is likewise denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 5, 2011.